UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CRIMINAL ACTION NO. 4:04CR-11-M**

**UNITED STATES OF AMERICA**                                                         **PLAINTIFF**

**V.**

**CECIL C. MANGRUM**                                                                  **DEFENDANT**

**MEMORANDUM OPINION**

On February 9, 2005, the Defendant was convicted of four misdemeanor counts of making false statements to obtain Federal Workers' Compensation Benefits in violation of 18 U.S.C. § 1920. This matter is before the Court for a determination of the amount of loss in this case. The United States filed a sentencing memorandum [DN 59]. The Defendant filed a response to the sentencing memorandum [DN 60] and an objection to the Presentence Investigation Report [DN 58]. A sentencing hearing was held on August 5, 2005. There appeared Bryan Calhoun, Assistant United States Attorney, and Defendant Cecil Mangrum, in person and with counsel, Mr. Scott Wendelsdorf. The Court heard the testimony of Mark Wiechman and the arguments of counsel concerning the amount of loss issue. The Defendant filed an Additional Proof Regarding Amount of Loss [DN 67, DN 68]. The United States filed a response [DN 69]. Fully briefed and argued, this matter is ripe for decision.

**Background**

Defendant, Cecil Mangrum, was charged with four counts of knowingly and willfully

making false statements to the United States Department of Labor, Office of Workers' Compensation Programs, in connection with an application for, or receipt of, Federal Workers' Compensation Benefits, and in doing so, obtained more than a $1,000 in benefits in violation of 18 U.S.C. § 1920.  On February 9, 2005, a jury returned a verdict of guilty as to lesser misdemeanor offenses included in each of the four counts.  Specifically, on each of the four counts the jury was presented with an additional finding: "**We, the Jury, find** that because of the false statement or report, the defendant obtained more than $1,000 in federal workers' compensation benefits."  The jury checked "No" on each count.  Thus, the Defendant was convicted of the lesser-included misdemeanor counts.

The Presentence Investigation Report calculated the Government's loss as $44,101.19.  At the sentencing hearing, both parties objected to this calculation.  The question now before the Court is the appropriate loss calculation for the purpose of determining the Defendant's offense level under the Sentencing Guidelines.

The Government argues that the amount of loss for sentencing purposes should be calculated as all the benefits Mangrum received from January 31, 1998 through April 9, 2002. See United States v. Henry, 164 F.3d 1304 (10th Cir.), cert. denied, 527 U.S. 1029 (1999).  In other words, the Government contends that the guideline loss Defendant should be accountable for is the entire amount of benefits that he received from the Department of Labor, Office of Workers' Compensation during this time period totaling $138,120.54.

The Defendant disagrees.  Defendant argues that the Court is bound by the jury's unanimous determination that the amount of loss for each count was no more than a $1,000

per count and that this amount should be used for calculating the advisory guideline offense. In the alternative, Defendant argues that the amount of loss should be the difference between the amount of benefits he actually received and the amount he would have received had he truthfully and accurately completed the OWCP 1032 Forms. See United States v. Dawkins, 202 F.3d 711 (4th Cir. 2000), cert. denied, 529 U.S. 1121 (2000); U.S.S.G. § 2B1.1, Application Note 3(F)(ii). Utilizing this measure of loss, the probation officer and the Government estimate the loss to be $44,101.19. However, the Defendant argues that even under this approach, the amount of loss is less than $5,000.00.

## Discussion

The Court must first determine the effect of the jury's additional finding. Defendant argues that by marking "No" to the additional finding, the jury determined that the amount of loss for each count was no more than a $1,000.00, and that this amount should be used for calculating the advisory guideline offense level. The Court rejects the Defendant's argument. The jury was not provided any information from which to determine a precise amount of loss. The additional finding by the jury simply determined that Mangrum's conviction is a misdemeanor, rather than a felony. With the advisory nature of the Guidelines, it is appropriate for the Court to determine the amount of loss for sentencing purposes. See United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005); United States v. Tate, 136 Fed. Appx. 821, 2005 WL 1385961 (6th Cir. June 10, 2005). See also United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005), cert. denied, ___ S.Ct. ___, 2005 WL 1865278 (2005)("'[W]ith the mandatory use of the Guidelines excised, the traditional

3

authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection." Id. (quoting United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005)).

The amount of loss determines the offense level under the Sentencing Guidelines. U.S.S.G. § 2B1.1; See also United States v. Sosebee, 419 F.3d 451, 456 (6th Cir. 2005). The Government contends that by making a false statement on the 1032 forms the Defendant forfeited all federal employee's compensation benefits he received during the time period in question. 5 U.S.C. §8148(a)[1] ; 20 C.F.R. § 10.529. Relying on United States v. Henry,164 F.3d 1304 (10th Cir. 1999) and United States v. Brothers, 955 F.2d 493 (7th Cir.), cert. denied, 506 U.S. 847 (1992), the Government argues that the "loss" for purposes of the Guideline calculation is $138,120.54.

However, the cases relied upon by the Government appear to be contrary to Application Note 3(F)(ii) of U.S.S.G. § 2B1.1 which provides that

> [i]n a case involving government benefits (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be. For example, if the defendant was the intended recipient of food stamps having a value of $100 but fraudulently received food stamps having a value of $150, loss is $50.

---

[1] Title 5 U.S.C. § 8148(a) provides:
Any individual convicted of a violation of section 1920 of title 18, or any other Federal or State criminal statute relating to fraud in the application for or receipt of any benefit under this subchapter or subchapter III of this chapter, shall forfeit (as of the date of such conviction) any entitlement to any benefit such individual would otherwise be entitled to under this subchapter or subchapter III for any injury occurring on or before the date of such conviction. Such forfeiture shall be in addition to any action the Secretary may take under section 8106 or 8129.

4

Relying in part on a similar application note, the Fourth Circuit in United States v. Dawkins, 202 F.3d 711 (4th Cir. 2000), rejected the same arguments made by the Government in this case. The Fourth Circuit held that the amount of loss for sentencing purposes is the difference between the amount of benefits a defendant actually received and the amount he would have received had he truthfully and accurately completed the forms. Id. at 715. The Fourth Circuit acknowledged that the Government may be entitled to collect the entire amount of benefits received via forfeiture under 20 C.F.R. § 10.529[2]. However, the Court found that the entire amount did not constitute a "loss" to the Government for guideline purposes. Id. According to the Fourth Circuit, forfeiture is a penalty imposed on a criminal defendant independent of any loss to the crime victim. Id.

After considering the above case law in light of Application Note 3(F)(ii), the Court adopts the reasoning set forth in United States v. Dawkins and concludes that the loss is the difference between the amount of benefits Defendant Mangrum actually received and the amount he would have received had he truthfully and accurately completed the 1032 forms.

Based upon the testimony and report of Mark Wiechman, a senior claims examiner

---

[2]Title 20 C.F.R.§ 10.529, entitled "What action will OWCP take if the employee files an incomplete report?," provides:
    (a) If an employee knowingly omits or understates any earnings or work activity in making a report, he or she shall forfeit the right to compensation with respect to any period for which the report was required. A false or evasive statement, omission, concealment, or misrepresentation with respect to employment activity or earnings in a report may also subject an employee to criminal prosecution.
    (b) Where the right to compensation is forfeited, OWCP shall recover any compensation already paid for the period of forfeiture pursuant to 5 U.S.C. 8129 and other relevant statutes.

for the Department of Labor, Office of Workers' Compensation Program (hereinafter "OWCP"), the Court determines that the amount of loss in the present case is $44,101.19. Specifically, Wiechman testified that had OWCP known Defendant Mangrum was working while receiving Federal Workers' Compensation Benefits, Mangrum's benefits would have been reduced over the time period in question by at least $44,101.19.

Defendant argues that the amount of loss estimated by the OWCP Representative Wiechman and adopted by this Court is inaccurate and speculative. Defendant contends that the calculation of loss by Wiechman is flawed because Mangrum is incapable of working forty (40) hours per week. Defendant also maintains that the tax returns submitted demonstrate that he had no actual earnings during the period in question.

The Court rejects the Defendant's argument. Despite the fact that Defendant maintains that he was unable to work, a jury concluded that the Defendant had the ability to work and did work during the period in question. Additionally, the fact that the Defendant's tax returns do not reflect any earned income during this period is of no import. The issue of loss is not related to how much the Defendant actually earned; instead, the question is the amount Mangrum's benefits would have been reduced had he truthfully reported his ability work. For example, if the Defendant volunteered forty (40) hours a week, he would earn no income for his work, but the OWCP would still reduce his benefits to reflect his ability to work.

Furthermore, while the Defendant attacks Wiechman's report as speculative, the fact of the matter is that the Defendant repeatedly misrepresented his ability to work and his

actual earnings during this time period. As a result, the OWCP could not base the reduction of Mangrum's benefits on his actual earnings and was forced to utilize a constructed wage-earning capacity calculation instead. Additionally, because of the lapse of time, the OWCP was unable to locate data from which to determine earnings of used car dealers during the period of time in question. Therefore, to establish Mangrum's constructed wage-earning capacity, Wiechman applied the minimum wage in effect in 1998 for the entire period in question and determined that Mangrum's benefits would have been reduced over this time by at least $44,101.19. OWCP utilizes constructed wage-earning capacity when there is no other way to calculate the reduction of benefits. The evidence presented reflects that this method is both sound and reasonable. Furthermore, given that the OWCP utilized the lowest earning calculation possible – minimum wage, the method is clearly conservative. Therefore, the Court finds that the amount of loss is $44,101.19.

## Conclusion

For these reasons, the Court finds by a preponderance of the evidence that the amount of loss for the purpose of determining the Defendant's offense level under the Sentencing Guidelines is $44,101.19. Thus, a 6-level increase pursuant to Section 2B1.1(b)(1)(D) is appropriate. With the total offense level of 12 and a criminal history category of I, the range of imprisonment under the advisory Guidelines is 10 to 16 months, that being in Zone C of the Sentencing Table. The Court hereby orders the Clerk to set this matter for sentencing at

a time and place agreeable to the parties.

cc: counsel of record